UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| CRESTDALE ASSOCIATES, LTD., <br><br> Plaintiff, <br><br> v. <br><br> EVEREST INDEMNITY INSURANCE COMPANY, <br><br> Defendant. | Case No. 2:09-cv-02439-LDG-GWF <br><br> **ORDER** |

The plaintiff, Crestdale Associates, Ltd., brought this suit against Everest Indemnity Insurance Company, asserting that Everest improperly retained advanced premiums paid, and unfairly computed premiums owed, on several Commercial General Liability policies. The parties filed cross-motions for Partial Summary Judgment (## 20, 34) as to claims concerning one of those policies. The Court will grant Everest's Motion for Summary Judgment and deny Crestdale's Countermotion.

**I. Background**

Crestdale is a business engaged in developing residential areas. Everest is an insurance company with its principal place of business in New Jersey. This is a dispute over insurance

premiums for Commercial General Liability insurance covering Crestdale's construction of single-family homes in several Clark County developments. Crestdale purchased three insurance policies from Everest: the "Hacienda Park" policy; the "Tudor Park" policy; and the "Village South" policy. Pursuant to provisions in the policies, an advance premium was calculated for each policy based upon the anticipated receipts from the sales of homes. Each of the policies contained an endorsement specifically relating to the calculation of the insurance premiums. The endorsement provides in part:

> The premium(s) due for this policy shall be calculated in accordance with the following:
>
> 1. The minimum earned premium shall be fully earned at the inception of the policy and is the greater of:
>    a. (25%) Twenty-five percent of the amount entered as advance premium in the schedule; or
>    b. The dollar amount shown in the schedule as the minimum premium. There will be no return of any portion of the minimum earned premium in the event of cancellation of the policy.

This endorsement also provides as follows:

> 2. In Section IV, Commercial General Liability Conditions, Item Premium Audit Part B. is deleted and replaced by:
>
>> The premium entered in the schedule as advance premium is a provisional premium only and is subject to adjustment in accordance with the audit provisions of this policy. Premium adjustments effected as a result of premium audits will be done after the policy is no longer in effect but may be done by us when a policy is in effect. Premium audit adjustment calculations will be made to determine additional premiums only. There will be no downward adjustments of the advance premium resulting from the premium audit provisions of this policy. The advance premium is fully earned after the date shown in the schedule as the fully earned premium date. If there is no date shown in the schedule, the fully earned premium date will be 12 months after the inception of the policy. There will be no return of any portion of the advance premium in the event of cancellation of the policy after this date.

The endorsement further provides:

      3.      The advance premium is determined according to the basis of premium, estimated exposure and composite rate shown in the schedule. The final premium will be determined by audit based on the actual exposure. Any audit premiums are due and payable on notice to the first named insured.

Crestdale purchased the polices during the height of residential construction in Clark County. While the policies were in effect, the residential housing market substantially declined. Consequently, Crestdale changed its plans with respect to the development of some of the property. Ultimately, it did not build any homes in Hacienda Park and in early 2006 sold all 142 lots to Pulte Homes. At about the same time, Crestdale also sold 66 remaining lots in its Tudor Park development to Pulte Homes. Accordingly, Crestdale seeks to recoup the costs of some of the insurance it purchased.

Crestdale's complaint contains several causes of action. The first seeks declaratory relief with respect to the specific obligations of the parties under the three policies. The second is for unjust enrichment with respect to the premium paid for the Hacienda Park policy. The third and fourth assert claims for breach of the implied covenant of good faith and fair dealing.

The parties' present cross-motions concern the Hacienda Park policy, which was to be in effect from April 20, 2004, to April 20, 2007. The minimum premium and advance premium for the Hacienda Park policy were the same amount: $277,000. The policy further provided that the advanced premium was fully earned on April 20, 2005. Crestdale canceled the policy effective April 1, 2006, a date subsequent to the date on which the advanced premium became fully earned.

Everest's motion seeks partial summary judgment with respect to whether Everest is entitled to retain the advance premium it received for the Hacienda Park policy and whether the necessary risk attached to the policy. Everest also seeks summary judgment with respect to Crestdale's unjust enrichment claim, contending that the cause of action does not exist where there is a valid and enforceable contract. Crestdale denies that a valid contract formed, claiming that the necessary risk did not attach to the policy. Everest also seeks summary judgment with respect to Crestdale's causes of action for breach of implied covenant of good faith and fair dealing and

tortious breach of the implied convent of good faith and fair dealing, arguing that, as a matter of law, no such causes of action exist in insurance premium disputes. Crestdale disagrees.

**II. Standard for Summary Judgment**

In considering a motion for summary judgment, the court performs "the threshold inquiry of determining whether there is the need for a trial—whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). To succeed on a motion for summary judgment, the moving party must show (1) the lack of a genuine issue of any material fact, and (2) that the court may grant judgment as a matter of law. Fed. R. Civ. Pro. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  A material fact is one required to prove a basic element of a claim. *Anderson*, 477 U.S. at 248. The failure to show a fact essential to one element, however, "necessarily renders all other facts immaterial." *Celotex*, 477 U.S. at 323.

"[T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Id*. "Of course, a party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex*, 477 U.S. at 323. As such, when the non-moving party bears the initial burden of proving, at trial, the claim or defense that the motion for summary judgment places in issue, the moving party can meet its initial burden on summary judgment "by 'showing'–that is, pointing out to the district court–that there is an absence of evidence to support the nonmoving party's case." *Celotex*, 477 U.S. at 325. Conversely, when the burden of proof at

trial rests on the party moving for summary judgment, then in moving for summary judgment the party must establish each element of its case.

Once the moving party meets its initial burden on summary judgment, the non-moving party must submit facts showing a genuine issue of material fact. Fed. R. Civ. Pro. 56(e). As summary judgment allows a court "to isolate and dispose of factually unsupported claims or defenses," *Celotex*, 477 U.S. at 323-24, the court construes the evidence before it "in the light most favorable to the opposing party." *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 157 (1970). The allegations or denials of a pleading, however, will not defeat a well-founded motion. Fed. R. Civ. Pro. 56(e); *Matsushita Elec. Indus. Co.v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986). Where there is no issue of fact to be determined, and the only issue to be determined is the application of the undisputed facts to the subject insurance policy, the interpretation of the policy is a question of law. *Washoe Cnty v. Transcontinental Ins. Co.* 110 Nev. 798 (1994); *Grand Hotel Gift Shop v. Granite State Ins. Co.*, 108 Nev. 811, 839 (1992); *Nationwide Mutual Ins. Co. v. Moya*, 108 Nev. 578 (1992). An insurance contract that is valid, enforceable, and unambiguous must be construed and enforced as it is plainly written. *See Farmers Ins. Exchange v. Young*, 108 Nev. 328 (1992).

**III. The parties entered into a valid and enforceable contract**

Everest argues that under the express terms of the Hacienda Park policy, it is entitled to retain the $277,000 that Crestdale paid as an advance premium. Crestdale does not dispute that the Hacienda Park policy unambiguously provides for Everest to retain the advanced premium. Instead, Crestdale counters that the policy fails for lack of consideration, contending that (1) a valid insurance contract requires the insurer to actually undertake the contemplated risk, and (2) that because homes were not constructed in Hacienda Park, Everest did not undertake the contemplated risk. This Court finds that actual risk did attach to the policy, and thus, that a valid and enforceable insurance contract formed.

Crestdale cites several cases for the proposition that insurance policies are not binding until risk attaches. Everest does not dispute this black letter proposition. Instead, Everest argues that the risk attached to the Hacienda Park policy and that Crestdale's cited authority does not indicate otherwise. The Court agrees.

First, Crestdale relies on *Tarleton v. De Veuve*, 113 F.2d 290 (9th Cir. 1940), contending that the obligation to pay a premium does not attach until the risk has attached. In *Tarleton*, the insurer issued and delivered a policy to an insurance broker. Confusion ensued regarding the payment of premium. Prior to payment, a fire destroyed the property covered by the policy and the insurer attempted to rely on the non-payment to escape liability. The court held for the insured, noting that the payment of premium was not required for the policy to be effective. Rather, both the risk and obligation to pay the premium attached to the policy when it was delivered to the broker. Accordingly, *Tarleton* instructs that an insurance contract becomes binding upon delivery. In the present case, there is no dispute that the Hacienda Park policy was delivered. Thus, *Tarleton* weakens Crestdale's position.

Crestdale also cites to *Autumn Ridge, L.P. v. Accordia of Va. Ins. Agency. Inc.*, 613 S.E. 2d 435 (Va. 2005). In *Autumn Ridge*, twelve limited partnerships brought claims against an insurance agency for negligence and breach of contract for failure to include them as named insureds on a policy. The partnerships paid the agency the policy premiums, but the agency failed to procure the coverage. The court held that "risk never attached as to each of the…partnerships because they were not included as named insureds on the builder's risk insurance policy." *Id.* at 439. Thus, the court found that failing to name the partnerships as insureds was tantamount to depriving them of what they bargained for–a binding contract for insurance coverage–and consequently, that the partnerships were entitled to a return of premiums paid. In contrast, Crestdale was a named insured on the Hacienda Park policy, which bound Everest to provide coverage from April 20, 2004, until Crestdale cancelled it April 19, 2006. Thus, the holding in *Autumn Ridge* is inapplicable.

Finally, Crestdale cites *In Re Texas. Ass'n of School boards*, for the proposition that "the

6

foundation of insurance is… risk distribution, and premiums are a function of calculated risk." 169 S.W. 3d 653 (Tex. 2005). However, the Texas Supreme Court's holding actually cuts against Crestdale's position, stating that in regard to insurance contracts, "the consideration to be valued is the undertaking of the risk that insured losses *might* occur." *Id* at 659 (emphasis added). While Everest's exposure to the risk of liability was reduced by Crestdale's failure to build and eventual conveyance of the property, this does not mean that risk never attached to the policy. Instead, the policy was in effect for two years before Crestdale sold the property. During that time Everest remained contractually obligated to anticipate risks resulting from the fact that Crestdale could have begun construction at any time, requiring Everest to calculate its business endeavors accordingly. Thus, while the probability of actual loss was reduced by Crestdale's actions, the policy is not invalid for want of consideration. *See* Restatement (Second) of Contracts § 72 (1981) ("any performance which is bargained for is consideration"). Accordingly, the Hacienda Park policy is a valid contract between the parties, and it is unambiguous with respect to Everest's entitlement to retain the $277,000. Moreover, because there is an express written contract, a cause of action for unjust enrichment does not exist under Nevada law. *Lease Partners Corp. v. Robert L. Brook Trust*, 113 Nev. 747, 756 (1997).

**IV. The implied covenant of good faith and fair dealing**

Relying on *Guaranty National Insurance Co. v. Potter*, 223 Nev. 199, 206 (1996), Crestdale argues that Nevada law would recognize a cause of action for the breach of implied covenant of good faith and fair dealing with respect to premium disputes. However, *Guaranty National* does not support this position. *See id.* The policy at issue in *Guaranty National* required the insureds to submit to independent medical examinations and contained an express promise to pay for the exams. The insurer refused to pay a portion of the cost of the testing and the providing doctor sought to recover the balance from the insureds. The court held that a cause of action for breach of the covenant of good faith and fair dealing existed with respect to the insurer's failure to

pay all of the costs associated with the exams, and noted that while Nevada law generally "addressed an insurer's breach of implied covenant of good faith and fair dealing as the unreasonable denial or delay in payment of a valid claim," the tort of bad faith was not expressly limited to such cases. *Id.* This reasoning does not sufficiently support the proposition that Nevada courts would also recognize a cause of action for bad faith with respect to the payment or withholding of insurance premiums. *Cf. Jonathan Neil & Assoc. Inc. v. Jones*, 94 P.3d 1055 (Cal. 2004) (holding that in disputes between the insured and the insurer over premiums, the cause of action for breach of the implied covenant of good faith is not necessary to protect the insured's interest). Therefore, Crestdale has not demonstrated the existence of a cause of action for the breach of the implied covenant of good faith and fair dealing with respect to the payment or withholding of insurance premiums.

Accordingly,

THE COURT **ORDERS** that Everest Indemnity Insurance Company's Motion for Partial Summary Judgment (#20) is GRANTED.

THE COURT FURTHER **ORDERS** that Crestdale Associates' Counter-motion for Partial Summary Judgment (#34) is DENIED.

DATED this 29 day of July, 2011.

_____
Lloyd D. George
United States District Judge